IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JOEL SANDOVAL, JR.,** </br> No. R30538 </br> </br> Plaintiff, </br> </br> vs. </br> </br> S.A. GODINEZ, </br> </br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) Case No. 13–cv–01295–MJR–SCW </br> ) </br> ) </br> ) </br> ) </br> ) |

# MEMORANDUM AND ORDER

**REAGAN, District Judge:**

    A.    INTRODUCTION

Joel Sandoval, Jr. is a former inmate of the Illinois Department of Corrections (IDOC) who was housed at Lawrence Correctional Center, within this Judicial District (Doc. 1). Sandoval currently is on parole (Doc. 16). The above-captioned civil rights case filed under 42 U.S.C. 1983 stems from Sandoval's incarceration with the IDOC from 2001 to 2011 (referred to herein as "first incarceration"). Sandoval then was re-incarcerated from 2012 until 2014 (referred to as "second incarceration").

In this lawsuit filed pro se on December 16, 2013, Sandoval alleges that the IDOC violated his constitutional rights during his first incarceration by improperly calculating his sentence and not crediting him for time spent in custody (see Doc. 1; Doc. 14; Doc. 19). Specifically, Sandoval claims he was improperly incarcerated from May 2011 to December 2011 (Doc. 1; Doc. 14; Doc. 19).

1

Sandoval's December 16, 2013 complaint alleged that William Lacy and Dennis Dernbach, two Illinois state court judges, refused to credit Sandoval with time served pretrial (Doc. 1). On threshold review under 28 U.S.C. 1915A on January 13, 2014, the undersigned dismissed that complaint--raising questions of judicial immunity and noting, inter alia, that as a general rule a challenge to the duration of custody must be presented via habeas corpus--and granted Sandoval leave to file an amended complaint (Doc. 8). Sandoval filed a first amended complaint on August 5, 2014 (Doc. 14). The Court dismissed that complaint and granted Sandoval leave to file a second amended complaint (Doc. 13).

On October 1, 2014, Sandoval filed his second amended complaint (Doc. 19), which identified IDOC Director S.A. Godinez as a Defendant for the first time. On threshold review of that complaint in a November 21, 2014 Order, the Court dismissed the claims against Defendants Lacy and Dernbach (on judicial immunity grounds) but allowed Sandoval's claim against Defendant Godinez (under the Eighth and Fourteenth Amendments to the United States Constitution) to proceed. Specifically, Sandoval alleges that Defendant Godinez refused to credit Sandoval with pretrial detention time despite being aware of the error.

Now before the Court is a summary judgment motion filed by Defendant Godinez with supporting memorandum on April 13, 2015 (Docs. 26, 27). Godinez asserts that Sandoval's claim is time-barred and merits dismissal because he failed to exhaust his administrative remedies before bringing this suit, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. 1997e(a) (2006).

Sandoval had until May 18, 2015 to respond to Defendant's summary judgment motion. As of October 26, 2015, Sandoval had neither responded nor requested additional time in which to do so. The motion is ripe for disposition.

In this District, failure to timely respond to a motion may be considered an admission of the motion's merits. *See Whitfield v. Snyder*, **263 Fed.Appx. 518, 521 (7th Cir. 2008); S.D. IL LOCAL RULE 7.1(c).** The Court considers Sandoval's failure to respond to the motion in any way such an admission. Even if the Court were to overlook Sandoval's failure to oppose Defendant's motion, it is clear from the record that summary judgment is warranted here, because Sandoval did not exhaust his administrative remedies. For the following reasons, the Court **GRANTS** Defendant's summary judgment motion (Doc. 26) and **DISMISSES** this case without prejudice.

B. <u>APPLICABLE LEGAL STANDARDS</u>

→ S**ummary Judgment Standard**

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, **648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted),** *citing* **FED. R. CIV. P. 56(a).** *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, **422 F.3d 603, 607 (7th Cir. 2005).**

The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477**

3

U.S. 317, 323 (1986).  After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)).

A fact is material if it is outcome determinative under applicable law. *Anderson*, 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Dep't,* 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  To survive summary judgment, the nonmovant must present more than a "mere scintilla" of evidence showing the existence of a genuine issue of material fact. *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir.), *cert. denied,* 135 S. Ct. 159 (2014). *See also Zuppardi v. Wal-Mart Stores, Inc.,* 770 F.3d 644, 650 (7th Cir. 2014).  Stated another way, a scintilla of evidence supporting the nonmovant's position is not enough; "there must be evidence on which the jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013).

On summary judgment, the Court considers the facts in the light most favorable to the non-movant (here, Plaintiff). *Srail v. Village of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).  The Court adopts reasonable inferences, and resolves doubts, in the nonmovant's favor. *Id.; Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008).  Summary judgment is "not an appropriate occasion for weighing the evidence" and should not be granted if the evidence before the court

4

supports alternate inferences. *Dowden v. Polymer Raymond, Inc.*, 966 F.2d 1206, 1207-08 (7th Cir. 1992). *See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004), *cert. denied*, 546 U.S. 1032 (2005).

→ *Exhaustion Under the PLRA*

Lawsuits brought by prisoners are governed by the Prison Litigation Reform Act (PLRA), 42 U.S.C 1997e. The PLRA requires that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until … administrative remedies as are available are exhausted." **42 U.S.C. 1997e(a).**

Exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust before he commences his federal litigation; he cannot exhaust *while* his lawsuit is pending. *See Perez v. Wisconsin Department of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999); *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002). If the inmate fails to exhaust before filing suit in federal court, the district court must dismiss the suit. *See Jones v. Bock*, 549 U.S. 199, 223 (2007); *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).[1]

The United States Court of Appeals for the Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("This circuit has taken a strict compliance approach to exhaustion").

---

[1] Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust prior to filing suit, the issue of exhaustion most often is raised via summary judgment motion, so that the Court can consider evidence "outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation. *See* FED. R. CIV. P. 12(d).

5

The exhaustion requirement of the PLRA is dependent upon the procedures established by the state in which the prison is located. *Jones*, **549 U.S. at 218.** Unexhausted claims may not be brought to court. *Jones*, **549 U.S. at 211,** *citing Porter v. Nussell*, **534 U.S. 516, 524 (2002).**

"Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).** This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." *Id*. **at 1025.** If the prisoner fails to comply with the established procedures, including time restraints, the court may not consider the claims. *Pavey v. Conley*, **663 F.3d 899, 903 (7th Cir. 2011).**

The purpose of the exhaustion requirement is two-fold. First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006);** *Woodford v. Ngo*, **548 U.S. 81, 89-90 (2006).** Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." *Porter*, **534 U.S. at 524.** *See also Booth v. Churner*, **532 U.S. 731, 737 (2001) ( PLRA's requirement will help "filter out some frivolous claims.").**

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait to commence litigation until he has completed the established process; he may not file in anticipation of administrative remedies soon being exhausted. *Perez*, **182 F.3d at 535,** *citing* **42 U.S.C 1997e(a);** *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** A suit filed prior to exhaustion of available remedies will be dismissed, even if the remedies become exhausted *while* the suit is pending. *Perez*, **182 F.3d at 535.**

The exhaustion requirement is an affirmative defense, on which defendants bear the burden of proof. *Pavey*, **663 F.3d at 903.** The Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41 (7th Cir. 2008).** Where failure to exhaust administrative remedies has been raised as an affirmative defense (i.e., exhaustion is contested, as it is in the case at bar), the district court should follow this recommended sequence (*id.*, **544 F.3d at 742)**:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.
>
> (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.
>
> (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

→  *Exhaustion under Illinois Law*

As an inmate confined within the Illinois Department of Corrections (IDOC), Plaintiff Sandoval was required to follow the regulations contained in the IDOC's

7

Grievance Procedures for Offenders to properly exhaust his claims. **20 Ill. Admin. Code 504.800,** *et seq***.** The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code 504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.*

> The grievance form must:
>
> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code 504.810(b).**

"The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code 504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board (ARB).

More specifically: "If after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the

8

Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code 504.850(a).**

"The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code 504.850(f).**

The grievance procedures also allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer (CAO) who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code 504.840(a).**

If an inmate forwards the grievance to the CAO as an emergency grievance, the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code 504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code 504.850(g).**

C. **ANALYSIS**

Plaintiff Sandoval filed three grievances pertaining to sentence credit or calculation (Doc. 27-1, pp. 3, 4). All three grievances were filed during Plaintiff's *second* incarceration (Doc. 27-3; Doc. 27-4; Doc. 27-5).

Plaintiff's first grievance, dated October 4, 2012, is related to educational good conduct credit (EGCC) during Plaintiff's second incarceration (Doc. 27-1, p. 3; Doc. 27-3). Plaintiff claimed he should be receiving good time for attending school, which began in September 2012 (Doc. 27-3, p. 10). Plaintiff's first grievance was received by the Administrative Review Board (ARB) on January 11, 2013 and returned to Plaintiff on February 1, 2013 with instructions to resubmit and provide a copy of the grievance officer's response (Doc. 27-1, p. 3; Doc. 27-3, p. 9). Plaintiff resubmitted his grievance. It was denied on January 24, 2014 because the nature of Plaintiff's conviction made him ineligible for EGCC (Doc. 27-3, pp. 12, 17).

Plaintiff's second grievance, also dated October 4, 2012, is related to miscalculated time served for his second incarceration (Doc. 27-1, p. 3; Doc. 27-4). Plaintiff claimed that when he was sentenced on June 7, 2012 he was supposed to be credited with a total of 184 days (Doc. 27-4). Plaintiff maintained that he was never credited with that time (Doc. 27-4). On March 13, 2013, Plaintiff's sentence was verified and found to be correct (Doc. 27-4, p. 3). Furthermore, on October 24, 2013, the grievance was returned to Plaintiff stating that the grievance was not properly submitted in the 60-day timeframe outlined in Department Rule 504 and would therefore not be addressed further (Doc. 27-4, p. 4).

10

Plaintiff's third grievance, dated June 30, 2013, is related to Plaintiff's parole calculation (Doc. 27-1, p. 4; Doc. 27-5). Plaintiff claimed his parole should be two years instead of three years and therefore requested his parole be changed from November 2013 to December 2012 (Doc. 27-5). Plaintiff's third grievance was not returned to him, because he entered his current parole term while the grievance was pending (Doc. 27-1, p. 4).

Plaintiff filed this lawsuit on December 16, 2013, alleging that during his first incarceration he was improperly imprisoned from May 2011 to December 2011 (Doc. 1). Plaintiff's initial complaint alleges that he did not present the facts related to his complaint in the prisoner grievance procedure (Doc. 1, p. 4). Plaintiff states the reason he did not follow the prisoner grievance procedure was that an error was made by a Cook County judge, and the institutional grievance process could not remedy decisions made by a district court or circuit court judge (Doc. 1, p. 4).

Plaintiff admits he did not follow the prisoner grievance procedure (Doc. 1, p. 4). He submitted no evidence of exhaustion, although he would not have the burden of proof on that issue at the pleading stage of litigation. Plaintiff alleges that Defendant deprived him of his constitutional rights pursuant to 42 U.S.C. § 1983 by falsely imprisoning him from May 2011 to December 2011, during the term of his first incarceration (Doc. 1; Doc. 8; Doc. 19).

Defendant submitted Plaintiff's grievances in support of the summary judgment motion (Doc. 27-3; Doc. 27-4; Doc. 27-5). According to an ARB Chairperson, Plaintiff's

file contains three grievances received by the ARB related to sentence credit or calculation (Doc. 27-1, p. 3).

As discussed above, none of the grievances discusses the incident described in Plaintiff's complaint – i.e., that during his *first* incarceration, he was falsely imprisoned from May 2011 to December 2011 (Doc. 27-3; Doc. 27-4; Doc. 27-5). Indeed, all of Plaintiff's grievances were submitted during his second incarceration, while the incidents alleged in his complaint occurred during his first incarceration (Doc. 27-3; Doc. 27-4; Doc. 27-5).

To recap, Plaintiff's first grievance, dated October 4, 2012, discusses receiving educational good conduct credit in September 2012, during his second incarceration (Doc. 27-3). Plaintiff's second grievance, also dated October 4, 2012, discusses a miscalculation his sentence for his second incarceration, beginning on June 7, 2012 (Doc. 27-4). Plaintiff's third grievance, dated June 30, 2013, discusses Plaintiff's parole calculation (Doc. 27-5). Not one of the grievances discusses an alleged miscalculation of time served from May 2011 to December 2011 – the basis for the instant lawsuit (Doc. 27-3; Doc. 27-4; Doc. 27-5). This is supported by Plaintiff's own admission that he did not file a grievance concerning the allegations in his complaint (Doc. 1).

Exhaustion of grievances is a precondition to filing suit. **Ford v. Johnson, 362 F.3d 395, 398 (7th Cir. 2004).** A prisoner must wait to bring suit until he completes the exhaustion process. **Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532, 535 (7th Cir. 1999) (citing 42 U.S.C. § 1997e(a))**. As explained above, the purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to

federal litigation, *Kaba*, **458 F.3d at 684,** and the IDOC process for exhausting administrative remedies is laid out in the Illinois Department of Corrections Grievance Procedures for Offenders, **20 Ill. Admin. Code 504.810.**

Plaintiff was required to file his grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. **20 Ill. Admin. Code 504.810(a)**. Plaintiff did not file any grievance discussing the alleged sentence miscalculation from May 2011 to December 2011 (Doc. 1; Doc. 27-3; Doc. 27-4; Doc. 27-5). The ARB could not address Plaintiff's grievance, the purpose of exhaustion was defeated, and the exhaustion requirement was not satisfied. Simply put, it is clear that the grievance process was not completed prior to the filing of Plaintiff's complaint.

D. CONCLUSION

Plaintiff's failure to respond to Defendant's dispositive motion acts as an admission to the merits of the motion. If the Court ignores the lack of response and considers the merits of the pending motion, Defendant prevails on the pending motion. The record before the Court plainly establishes that Plaintiff failed to exhaust administrative remedies before bringing the instant suit. Accordingly, the Court **GRANTS** Defendants' motion (Doc. 26), and **DISMISSES** this case without prejudice.

IT IS SO ORDERED.

DATED October 28, 2015.

                 s/ *Michael J. Reagan*
                 Michael J. Reagan
                 United States District Judge